IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHRISTINE STENGER,

        Plaintiff,

v.                              Civil Action No. 5:07CV146
                                         (STAMP)

CARELINK HEALTH PLANS, INC.
and PATRICK W. DOWD,

        Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REMAND,**
**GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE**
**SURREPLY TO PLAINTIFF'S MOTION TO REMAND,**
**DENYING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE**
**AND DENYING PLAINTIFF'S MOTION TO STAY AND/OR TO ENLARGE**
**RESPECTING DEFENDANTS' MOTION TO DISMISS AS MOOT**

I.   Procedural History

The above-styled civil action is before this Court as a result of a notice of removal filed by the defendants in which the defendants assert that federal jurisdiction is pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(a), and 29 U.S.C. § 1140. The plaintiff, Christine Stenger ("Stenger"), commenced this civil action in the Circuit Court of Ohio County, West Virginia, asserting several state law claims against Carelink Health Plans, Inc. and its former President and Chief Executive Officer, Patrick W. Dowd ("Carelink defendants" or "defendants"), including discrimination, intimidation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Following removal of the action, the defendants filed a motion to dismiss to which the plaintiff did not respond, but instead, filed

a motion to stay and/or to enlarge the time period for responding to the motion to dismiss. Also before this Court is the plaintiff's fully briefed motion to remand, and the defendants' motion for leave to file a surreply to plaintiff's motion to remand. For the reasons set forth below, the plaintiff's motion to remand, as well as the defendant's motion for leave to file a surreply are both granted. The defendants' motion to dismiss is denied without prejudice. Accordingly, the plaintiff's motion to stay and/or to enlarge the time limitations respecting defendants' motion to dismiss is denied as moot.

## II. Facts

Stenger is a subscriber to a group health care plan issued by Carelink Health Plans, Inc. in the state of West Virginia. Stenger alleges that she pursued an administrative claim before the West Virginia Insurance Commissioner regarding a grievance of a claim denial by Carelink, in strict accordance with the procedure outlined in her health care plan. Ultimately, Stenger's claim for benefits under her Carelink health care plan was granted in a final order by the insurance commissioner on December 14, 2006.

In her complaint, Stenger states that she is not seeking to recover benefits, enforce her rights, or clarify her rights to future benefits under the terms of her health care plan provided by Carelink. Instead, Stenger is now asserting claims arising from actions that the Carelink defendants took both prior to and during the course of the administrative hearing before the insurance

2

commissioner, including issuing Stenger a letter accusing her of knowingly impersonating an employee of the West Virginia Insurance Commissioner's office in violation of state law. In her four-count complaint, Stenger alleges discrimination under West Virginia Code § 5-11-9, intimidation pursuant to West Virginia Code §§ 61-5-27(b) and 61-5-27(c), and both intentional infliction of emotional distress and negligent infliction of emotional distress arising from the same actions described in the first two counts.

The Carelink defendants removed this action to this Court, arguing that because Stenger is seeking damages for the maladministration of an employee welfare benefit plan that is regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., all or part of her claims for discrimination, intimidation, intentional infliction of emotional distress, and negligent infliction of emotional distress are completely preempted by ERISA, and therefore, removable to this Court.

III.  Applicable Law

A.  Motion to Remand

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where

the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. Id.

B.    Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

## IV.    Discussion

A.    Motion to Remand

As an initial matter, for good cause shown, the defendants' motion for leave to file a surreply to plaintiff's motion to remand is hereby granted. Accordingly, this Court will consider any

issues addressed by the Carelink defendants in their surreply in analyzing and reaching its ultimate holding stated below.

The plaintiff argues that this case should be remanded to the Circuit Court of Ohio County, West Virginia because she is not seeking to recover benefits, enforce rights, or clarify any rights under the health care plan, but only asserting state law claims that are not subject to complete preemption by ERISA.

This Court begins its analysis by recognizing that while Congress may expressly preempt state law by statute, a court must address "claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers, 514 U.S. 645, 654 (1995). The clear language of ERISA's preemption provision states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any benefit plan." 29 U.S.C. § 1144(a). While this provision is "clearly expansive" textually, the United States Supreme Court has stated that ERISA's preemption provision is not boundless: "If 'relate to' were taken to extend to the furthest stretch of its indeterminancy, then for all practical purposes pre-emption would never run its course." Id. at 655. Thus, while "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has connection with or reference to such plan," Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983), "some state actions may affect employee benefit

plans in too tenuous, remote, or peripheral a manner to warrant a
finding that the law 'relates to' the plan."  <u>Id.</u> at 100.

The Supreme Court sought to eradicate the confusion often
associated with the term "relate to" by adopting a pragmatic
approach in determining what specific state law claims ERISA
preempted.  Thus, in <u>New York Blue Cross v. Travelers Insurance</u>,
514 U.S. at 656, the Court went "beyond the unhelpful text and the
frustrating difficulty of defining its key term ["relates to"], and
look[ed] instead to the objectives of the ERISA statute as a guide
to the scope of the state law that Congress understood would
survive [preemption]."  In its opinion, the Court first reaffirmed
Congress' main purpose in passing ERISA's preemption provision:

> "[T]o ensure that plans and plan sponsors would be
> subject to a uniform body of benefits law; the goal was
> to minimize the administrative and financial burden of
> complying with conflicting directives among States or
> between States and the Federal Government . . . [and to
> prevent] the potential for conflict in substantive law
> . . . requiring the tailoring of plans and employer
> conduct to the peculiarities of the law of each
> jurisdiction."

<u>Travelers</u>, 514 U.S. at 656-57 (quoting <u>Ingersoll-Rand Co. v.</u>
<u>McClendon</u>, 498 U.S. 133, 142 (1990)).  "The basic thrust of the
pre-emption clause, then, was to avoid a multiplicity of regulation
in order to permit the nationally uniform administration of
employee benefit plans."  <u>Travelers</u>, 514 U.S. at 657.

The Court then went on to explain the three categories of
state laws that Congress intended ERISA to preempt.  "First,
Congress intended ERISA to preempt state laws that "mandate [ ]

6

employee benefit structures or their administration." <u>Coyne &</u> <u>Delany Co. v. Selman</u>, 98 F.3d 1457, 1468 (4th Cir. 1996)(quoting <u>Travelers</u>, 514 U.S. at 658)). <u>See e.g.</u> <u>Shaw v. Delta Air Lines,</u> <u>Inc.</u>, 463 U.S. 85 (1983) (citing <u>Travelers</u>, 514 U.S. at 657) (holding that ERISA preempted New York Human Rights Law that prohibited employers from structuring benefit plans in a way that discriminates on the basis of pregnancy because the plan's "mandates affecting coverage could have been honored only by varying the subjects of a plan's benefits whenever New York law might have applied")). Second, "Congress intended to preempt state laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." <u>Coyne &</u> <u>Delany Co.</u>, 98 F.3d at 1468 (quoting <u>Travelers</u>, 514 U.S. at 658)). Last, "Congress intended to preempt "state laws providing alternate enforcement mechanisms for employees to obtain ERISA plan benefits." <u>Id.</u> <u>See</u> <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 135 (1990) (concluding that "a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA" was preempted by ERISA).

Of significant importance to the case currently before this Court, however, are those state laws that ERISA does not preempt. In <u>Custer v. Sweeney</u>, 89 F.3d 1156, 1167 (4th Cir. 1996), the Fourth Circuit held that ERISA did not preempt state law claims for legal malpractice. Specifically, the Court stated that "legal

7

malpractice represents a traditional exercise of state authority,"
and "ERISA does not evince a clear legislative purpose to preempt
such traditional state-based laws of general applicability." Id.
The Fourth Circuit reaffirmed this holding only a few months later
in Coyne & Delany Co. v. Selman, 98 F.3d at 1469, stating that
professional malpractice claims are not preempted by ERISA because
Congress did not intend to preempt "traditional state-based laws of
general applicability [that do not] implicate the relations among
the traditional ERISA plan entities." (internal citations omitted).

With this overview of ERISA preemption law, this Court now
turns to the facts of this case and holds that Stenger's state law
claims are not preempted by ERISA and does not warrant federal
jurisdiction. Stenger asserts four counts in her complaint. In
Count One, Stenger claims that the Carelink defendants committed
unlawful discriminatory practices under West Virginia Code § 5-11-
9(6) by refusing, withholding from, or denying the accommodations,
advantages, privileges or services of a place of public
accommodation due to Stenger's alleged disability. Furthermore,
Stenger alleges that the Carelink defendants also committed
unlawful discriminatory practices within the meaning of West
Virginia Code § 5-11-9(7) by engaging in threats or reprisals with
the purpose to harass, degrade, and embarrass Stenger because of
her alleged disability. In Count Two, Stenger claims that she is
entitled to a civil cause of action pursuant West Virginia Code
§ 61-5-27(f) because the Carelink defendants used intimidation,

8

harassment, and threats to obstruct her from testifying in an official proceeding under West Virginia Code § 61-5-27(b), as well as threatened, or attempted to threaten her, with the intent to retaliate against her, for participating in an official proceeding within the meaning of West Virginia Code § 61-5-27(c). In Count Three and Count Four, Stenger is alleging claims for intentional infliction of emotional distress and negligent infliction of emotional distress arising out of the defendants' actions that formed the basis for the discrimination and intimidation claims.

Allowing these claims to proceed in state court will not undermine the Congressional policies of the ERISA statute to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans and by providing appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. § 1001(b). More so, permitting Stenger's claims to go forward in state court will not interfere particularly with the preemption provision by subjecting plan administrators and plan sponsors to "conflicting directives among States or between States and the Federal Government." Travelers, 514 U.S. at 656 (citing Ingersoll-Rand, 498 U.S. at 142). Finally, Stenger's state law claims create no "potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." Id. at 656-57. Therefore, this Court does not need

to find that Stenger's claims are preempted in an attempt to protect the objectives of ERISA.

This Court also holds that Stenger's claims do not fall within any of the three categories of state law claims that Congress intended the ERISA preemption provision to actually preempt. The state law claims of discrimination, intimidation, as well as intentional infliction of emotional distress and negligent infliction of emotional distress that arose out of the discrimination and intimidation, do not "mandate employee benefit structures or their administration." See Travelers, 514 U.S. at 658. Similar to the professional malpractice claim held not to be preempted by ERISA in Coyne & Delany Co., Stenger's state law claims do not regulate the terms of a plan, determine what benefits a plan may provide, create reporting, disclosure, or funding requirements, affect the circulation of benefits, define fiduciary duties, or address faulty plan administration. See Coyne & Delany Co., 98 F.3d at 1471.

Also, because Stenger's claims do not attempt to bind a plan administrator to particular choices or preclude uniform administrative practice, the claims do not function as a regulation of an ERISA benefit plan. See Travelers, 514 U.S. at 658. She is not, for example, seeking relief "that would dictate how a plan administrator must process benefit information, dictate who may have access to such information, or limit the ability of the plan

administrator to investigate benefit claims." Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 190 (4th Cir. 2002).

Lastly, West Virginia's statutory and common law claims for discrimination, intimidation, intentional infliction of emotional distress, and negligent infliction of emotional distress cannot be considered an "alternate enforcement mechanism [ ]" for employees to obtain ERISA plan benefits. See Travelers, 514 U.S. at 658. In Coyne & Delany Co. v. Selman, 98 F.3d at 1471, the Fourth Circuit held that a common law malpractice action is not an "alternate enforcement mechanism," in part, because the claim was not made with the intent to obtain ERISA benefits. Rather, the claim sought damages from the defendants as individuals. Id. If the plaintiff prevailed, the defendants would be liable in their individual capacities. See also Vaughn v. CVS Revco D.S., Inc., 551 S.E.2d 122, 127 (N.C. Ct. App. 2001) ("Should plaintiff prevail on the damages portion of his claim for [anticipatory breach of contract and unfair and deceptive trade practices], his recovery would be limited to damages against the defendant itself, and he would not be entitled to recover ERISA plan benefits."). Similar to the plaintiffs in those cases, Stenger is not seeking ERISA benefits. Pursuant to the final order by the insurance commissioner, Stenger was already awarded all of the benefits that she requested. If she is successful in her claims against the Carelink defendants, Stenger will only receive damages from the individual defendants.

As such, Stenger's claims cannot be considered an alternate enforcement mechanism to receive ERISA benefits.

The Carelink defendants argue that Stenger's claims are preempted by ERISA because they relate to the denial of her claim for benefits and the defendants' conduct therein. More specifically, the defendants allege that "because Plaintiff opted for relief from the Commissioner--which is an express term of her ERISA plan--Defendants' alleged conduct with regard to that proceeding directly relates to the manner in which the plan was administered." (Defs.' Resp. Mot. Remand 19.) This Court finds this argument unpersuasive.

Stenger is attempting to assert state law rights of general applicability. West Virginia Code § 33-25C-5(b) allows an enrollee in an ERISA plan to appeal to the insurance commissioner any final decision resulting from an internal grievance procedure. The Carelink health plan clearly states "Appeals to the Insurance Commissioner . . . are voluntary and not part of the Health Plan internal appeal requirements." (Defs'. Resp. Mot. Remand Ex C. p. 37.) Therefore, West Virginia law creates Stenger's remedy. Additionally, claims for discrimination and intimidation are "generally applicable [laws] that make[ ] no reference to, or function[ ] irrespective of, the existence of an ERISA plan." Ingersoll-Rand, 498 U.S. at 139. West Virginia prohibits discrimination on the basis of disability and intimidation in official proceedings whether or not an ERISA plan is involved.

12

These claims are not dependent on the existence of ERISA in any way. See Coyne & Delany Co., 98 F.3d at 1471. As a result, this Court finds that Stenger's state law claims do not "relate to" ERISA.

Because this Court finds that Stenger's state law claims do not "relate to" an ERISA benefit plan, preemption is inappropriate. The plaintiff's motion to remand is granted for further proceedings to take place in state court.

B.    Motion to Dismiss

Lacking subject matter jurisdiction, this Court does not reach the Carelink defendants' arguments in support of dismissal for failure to state a claim. Accordingly, the Carelink defendants' motion to dismiss is denied without prejudice so that the defendants can refile the motion in state court, if it is appropriate to do so. Consequently, the plaintiff's motion to stay and/or enlarge the time limitations to respond regarding defendants' motion to dismiss, is also denied as moot.

V.    Conclusion

For the reasons stated above, the plaintiff's motion to remand is GRANTED. The Carelink defendants' motion for leave to file a surreply to plaintiff's motion to remand is also GRANTED. Because this Court has found that it lacks subject matter jurisdiction over this case, the Carelink defendants' motion to dismiss is DENIED WITHOUT PREJUDICE, and the plaintiff's motion to stay and/or enlarge the time limitations to respond regarding the motion to

dismiss is DENIED AS MOOT.   It is ORDERED that this case be REMANDED to the Circuit Court of Ohio County, West Virginia.  It is further ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of the Circuit Court of Ohio County, West Virginia.   Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    September 26, 2008


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE